IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRADLY GIBSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 21-00103-JB-N |
| | ) |
| **OUTOKUMPU STAINLESS STEEL USA, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on Defendant Outokumpu Stainless USA, LLC's ("OTK"), motion to exclude the testimony of Jeff Mroz (Doc. 95) and Plaintiff Bradly Gibson's ("Gibson") motion to exclude the testimony of Defendant's expert witness Dr. Carole Amidon-Johansson, Ph.D. (Doc. 97) and their respective responses and replies (Docs. 104, 105, 108, and 109). A hearing was held on May 1, 2023, and the Court has reviewed the motions, supporting briefs, and the various exhibits filed in support of the motions. For the reasons discussed below, the motions are **DENIED.**

## BACKGROUND

The Court need not go into great detail about the underlying facts of this action for unpaid wages pursuant the FLSA and common law. Relevant to the instant motions, however, is the fact that this case has been complicated at numerous stages based on the undisputed fact that OTK's employee records do not provide information such that Gibson's alleged damages are readily apparent. Indeed, the insufficiency of OTK's records were discussed countless times in this Court's recent order on the parties' respective motions for summary judgment. It is no surprise,

then, that both parties have engaged individuals to calculate Gibson's potential damages based on their respective positions as to the appropriate data to be used and have both filed motions to exclude the testimony of the other's expert witness.

For OTK's part, it designated Dr. Carole Amidon-Johansson, Ph.D. ("Johansson"), a labor economist who after reviewing OTK's employee records, determined the number of minutes that were potentially unpaid to Gibson, then calculated potential underpayments to Gibson using three payrates, which resulted in a "range of potential underpayments." (Doc. 105). Thus, OTK plans to present testimony through Johansson as to what OTK paid Gibson and dispute the calculations performed by Gibson's expert.

For Gibson's part, he engaged Jeff Mroz ("Mroz"), "as a sophisticated computer programmer to prepare what is in effect a mini-computer program to process the earnings and time worked data for Mr. Gibson and make calculations from that data." (Doc. 104 at 2). "The application then performs the mathematical function of calculating a regular rate of pay, and a corresponding overtime payment due amount, with credits for designated overtime payments." (*Id*. at 3). In the end, Mroz, like Johansson, prepares alternative reports showing the computations "within alternate designated parameters and/or different data inputs for credited overtime payments." (*Id*.)

The parties have now filed their respective motions to exclude these witnesses on the grounds that their anticipated testimony falls short of the standards set forth by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993) and is otherwise inadmissible under any other Federal Rule of Evidence. The Court will address each witness in turn.

**DISCUSSION**

**I.     Testimony of Jeff Mroz**

As indicated above, Mroz has essentially created a computer program to run various calculations of Gibson's potential damages and plans to testify as to his calculations. Summarily, Mroz's computer program has performed math. OTK argues that Mroz should be excluded pursuant to Rules 701, 702, and 703, and *Daubert*. (Doc. 95). Although most of OTK's motion focuses on Rule 702, the Court finds such an analysis unnecessary here, where Gibson has plainly stated that Mroz has no opinion about 1) how much money Gibson should receive, (2) the methodology by which overtime pay due should be calculated, or (3) when the applicable work week for calculations should begin or end. *Id*. In short, Gibson concedes Mroz "is not tendered as Rule 702 or 703 expert" and is "making no opinions whatsoever". (Doc. 104 at 3-4, 6). Accepting Gibson's concession that Mroz will not offer opinion testimony and is plainly not an expert, the Court will consider whether Mroz can testify on the other grounds presented by Gibson *i.e*., as a fact witness under Rule 602, as a "lay" witness under Rule 701, or as a "summary" of voluminous writings" under Rule 1006. (*Id*. at 8-9). OTK opposes inclusion of Mroz's testimony on each of these grounds.

**A.     Rule 701**

Rule 701 permits a lay witness to testify as to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. In support of his position that Mroz can testify under Rule 701, Gibson points to *Geter v. Galardi South Enterprises, Inc.*, 2015 WL

3

2155721 (S.D. Fla. May 7, 2015). In *Geter*, the court denied defendant's motion to exclude an expert who was designated to testify as to a calculation of estimated damages in an FLSA action. *See Id*. The defendant sought to exclude the expert, a certified public accountant, pursuant to Rule 702 and *Daubert* because his testimony constituted "basic arithmetic". *Id*. at *2. The court agreed with defendant's classification of the testimony but determined that "while [he] may not testify as an expert, he may testify as a lay witness as to his mathematical computations of damages." *Id*. at *4. OTK argues that *Geter* is unhelpful to Gibson because in *Geter*, the court found the CPA's testimony was "based on his perception of the applicable wage rates, hours worked, and fees paid to perform" while in this action, Mroz "did not consider the hours associated with the overtime amounts that OTK paid Mr. Gibson, choosing to consider instead, the 'dollar values' only." (Doc. 109 at 8).

This Court is not convinced that the distinction pointed out by OTK renders Mroz's calculations inadmissible. Mroz's place in this litigation was to create a computer program capable of running mathematical calculations. OTK does not dispute he is qualified to create the computer program or that his calculations are themselves, flawed. Instead, its argument is that because Mroz used data provided to him from Plaintiff's counsel, the resulting calculations are not based on his personal knowledge. However, in that same regard, OTK recognizes that Mroz "might arguably have 'personal knowledge about the calculations' performed by the 'application' he developed and 'wrote the code for.'" (Doc. 109 at 4 citing to Doc. 4). Further, this Court is not persuaded by OTK's position that *Tim Horton USA, Inc. v. Singh*, 2017 WL 4837552, (S.D. Florida October 25, 2017) supports the exclusion of Mroz's testimony. In *Horton*, plaintiff presented evidence of future lost profits through testimony of its senior manager of finance

4

pursuant to the exception to Rule 701 which permits an officer or owner to testify about his or her business.  *See* Fed. R. Civ. P. 701.  In excluding the testimony, the court concluded that the expert did not have personal knowledge because he was not testifying as to his own company's lost profits, but as to another company's lost profits.  *Horton*, at *14.  The court further reasoned exclusion was necessary because the expert relied on a software algorithm, that "was not made available to Defendants before or during trial" which "undermined defense counsel's ability to effectively cross-examine this 'lay' witness who never produced a report." *Id*.  Finally, the court stated, "if Plaintiffs hoped to properly use the limited exception for lay witness testimony, then they were required to present a lay witness with personal knowledge about the calculations." *Id*.

Differing from the analysis in *Horton*, however, Mroz is not being proffered under the business exception to Rule 701.  Moreover, the record reflects he has personal knowledge of the calculations that were performed and unlike the cases relied on in *Horton*, Mroz is not offering any opinions as to what Plaintiff's damages *should be* pursuant to the FLSA based on expertise.  Accordingly, the Court agrees with Gibson's classification of Mroz as "not an expert" and finds his anticipated testimony to be more akin to the testimony of the CPA in *Geter*, *i.e.*, Mroz is personally knowledgeable about the "math" that was performed and can testify as to those calculations, subject to cross-examination by OTK.  Additionally, the Court is satisfied that Mroz's testimony will be helpful in determining a fact in issue.  As such, Mroz may testify as to his mathematical computations.[1]

---

[1] Because this Court finds favor in Gibson's argument under Rule 701, it need not address the other avenues for admission presented by him.

II. **Testimony of Dr. Carole Amidon-Johansson, Ph.D**

Like Mroz, Johansson was engaged to run calculations as to Gibson's potential damages. These calculations again involve basic math, albeit on a scale that would be difficult to perform without assistance. Although OTK insists that Johansson's calculations are admissible expert testimony under Rule 702 and *Daubert*, the Court finds that the arguments presented for and against the admission of Johansson's testimony mirror those presented in the motions and responses made with respect to Mroz. Similarly, the Court is persuaded that regardless of whether Johansson would be permitted to testify as an expert under Rule 702/*Daubert*, the Court would ultimately reach the same conclusion as above, *i.e.*, that Johansson's calculations would be admissible under Rule 701. Accordingly, the Court need not indulge in a *Daubert* discussion as to her calculations.

However, during the hearing on the relevant motions, OTK argued that Johansson could also provide testimony as to the established workweek. More specifically, OTK seeks to elicit testimony from Johansson that "OTK has consistently calculated whether its employees worked over 40 hours (and thus worked overtime) in a work week by starting its work week with the Sunday morning shift at 6 AM." (Doc. 93-1 at 4). As explained by OTK, in performing her calculations, Johansson determined the "math" supported OTK's position that it paid Gibson based on a workweek starting at 6 a.m. on Sunday. This testimony is, therefore, distinguishable from Mroz's anticipated non-expert testimony, in that it offers her opinion concerning the alleged workweek. This proposed expert testimony or "wrinkle" as it was referred to, therefore requires a *Daubert* determination.

### A.     Standard of Review

The United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993) found that scientific expert testimony is admissible only if the proffered testimony is both relevant and reliable.  "[A] district court judge is to act as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." *Dhillon v. Crown Controls Corporation*, 269 F.3d 865, 869 (7th Cir. 2001); *see also U.S. v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999).  However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence."  *Quiet Technology DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).  "[A] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury." *Id*. (citing *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).  "Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"  *Id*. (quoting *Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798).

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID 702. The rule compels district courts to "conduct an exacting analysis of the foundations of the expert opinions to ensure they meet the standards for admissibility under Rule 702." *United States v. Abreu*, 406 F.3d 1304, 1306 (11th Cir. 2005) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation marks omitted)). Accordingly, under Rule 702, "this Court has an obligation to screen expert testimony to ensure it stems from a reliable methodology, sufficient factual basis, and reliable application of the methodology to the facts." *Whatley v. Merit Distribution Services*, 166 F.Supp.2d 1350, 1353 (S.D. Ala. 2001) (citations omitted).

The Eleventh Circuit requires district courts to engage in a "rigorous three-part inquiry" for assessing the admissibility of expert testimony under Rule 702:

> Trial courts must consider whether: "(1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1999)). These requirements are known as the "qualifications," "reliability," and "helpfulness" prongs. See *id*. "[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct," but must establish "by a preponderance of the evidence, it is reliable." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)); see also *Whatley*, 166 F.Supp.2d at 1354 ("the proponent of the expert testimony has the burden

8

to establish by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied.")(citations omitted).  Factors that may be relevant include:

> (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) in the case of a particular ... technique, the known or potential rate of error, and (4) whether the theory or technique is generally accepted by the relevant . . . community.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (internal quotation marks and alterations omitted). Additional factors that may be taken into account by a district court include:

> (1) Whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for purposes of testifying;
>
> (2) Whether the expert has unjustifiably extrapolated from an accepted to an unfounded conclusion;
>
> (3) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;
>
> (4) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

FED. R. EVID. 702 advisory committee's note to 2000 amendments (internal citations omitted).

"To fulfill its gatekeeping function under Rule 702, a district court must not simply tak[e] the expert's word for it."  *Edwards v. Shanley*, 2014 WL 4747186, *6 (11th Cir. Sept. 25, 2014) (citation and internal quotations omitted).  "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong."  *Id*. (quoting *United States v. Frazier*, 387 F.3d 1244, 1258, 1261 (11th Cir. 2004) (en banc)).  For the "helpfulness" prong, the court considers whether the expert testimony concerns matters that are beyond the understanding of the

average layperson. *See United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen"). Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *Frazier*, 387 F.3d at 1262-63. Additionally, "[a]n opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704. An expert may testify as to his opinion on an ultimate issue of fact. *United States v. Delatorre*, 308 Fed. Appx. 380, 383 (11th Cir. 2009).

      **B.**     **Analysis**

One of the issues to be determined at trial is whether OTK designated and used a fixed, recurring 168-hour period ("workweek") to calculate overtime pay as required by the FLSA. As such, the jury must determine whether (1) OTK established a workweek, and (2) calculated pay according to what it established. As this Court understands Johansson's anticipated testimony, she has no opinions whatsoever as to whether OTK established a workweek or whether any alleged workweek complies with the FLSA. Rather, she plans to opine that the workweek OTK claims to have established aligns, as a matter of math, with OTK's employee records.[2] At the hearing, OTK's counsel explained Johansson did a calculation to determine whether the numbers on Gibson's checks match up to the workweek that OTK claims it used.[3]

In response to counsel's arguments made in open court, Plaintiff voiced his concerns with Johansson's testimony, arguing her opinion does not require expert testimony and does not

---

[2] The Court accepts that Johansson has no opinions on these issues and will not seek to offer testimony in that respect. As such, the Court has attempted to narrow the arguments made in the filings to those that are relevant to the one issue or "wrinkle" on which Johansson plans to offer an opinion.

[3] Although the transcript of the hearing held on May 1, 2023, is not a part of the record, the Court has summarized the arguments from its recollection of the arguments and a review of the rough transcript.

consider how employees working other shifts were paid. These arguments supplemented Plaintiff's arguments in his motion that any opinions offered by Johansson were inadmissible because (1) she was not qualified, and her opinions were (2) unreliable, (3) would not assist a jury, (4) were not based on personal knowledge, and (5) were irrelevant. (*See* Doc. 97, generally).

The Court finds that Dr. Johansson has the requisite knowledge, skill, experience, training, or education, to render an opinion on the specific issue addressed by her proposed testimony. *See* Fed. R. Evid. 702. As an initial matter, Gibson concedes Johansson's academic background is incontrovertible. Indeed, in that regard, the records reflect that Johansson is a labor economist with a Ph.D. in economics and finance from the University of Illinois, a master's degree in economics from the University of Arkansas, and undergraduate degrees in mathematics and economics from Alma College. (Doc. 93-1 at 2; Doc. 105 at 3-4). However, Gibson complains that Johansson lacks the necessary expertise to render an opinion as to the specific issues presented in this case because while she has generally been involved with wage and hour issues in other ways, she has not consulted with employers about wage and hour matters outside of litigation, provided any advice to employers about complying with the FLSA, and has not made any presentations or drafted any publications concerning wage and hour compliance. (Doc. 97 at 6).

Despite Gibson's proffered shortcomings, the Court is satisfied that in addition to her education, Johansson's experience supports that she is qualified to render expert testimony. More specifically, Johansson's curriculum vitae indicates that she "specializes in economic and statistical analysis for labor and employment matters" and has twenty-five years' experience conducting studies involving the comparison of "time and payroll systems including analyses regarding the Fair Labor Standards Act compliance." (Doc. 93-1 at 2, 13). Johansson's deposition

testimony additionally confirms that while she has not provided testimony for any wage and hour FLSA cases, she has been "involved in probably a 150 though over the years, maybe more, in all sorts of ways." (Doc. 105-1 at 4). Cumulatively, the record confirms Johansson is qualified to render an expert opinion in this case.

Next, the Court finds Johansson's testimony to be reliable. Although Gibson contends that Johansson's methodology is not sufficiently reliable, he admits "there is, of course, a methodology to the irrelevant calculations Johansson's staff performed, but there is no methodology, much less a reliable methodology, for any of the other statements that read like opinions in her report." (Doc. 97 at 8). The record clearly reflects that Johansson's calculations were preformed based on her review of Gibson's time and pay records. As such, the Court understands Gibson's objection to be that Johansson's anticipated testimony relating to OTK's workweek is unreliable because Johansson relied on certain records or information, to the exclusion of other information or evidence. For example, Gibson points out that Johansson based her workweek opinion on Gibson's offer letter and OTK's employee handbook, but failed to consider work schedules of employees other than Gibson or testimony that OTK pays all employees on the same work week. (*Id*.) Despite the alleged exclusions, the record reflects still that Johansson's calculations and resulting opinion is based on sufficient facts, *i.e.* Gibson's offer letter, the OTK handbook, and Gibson's time and pay records. The Court is satisfied, then, that Gibson's complaints are better characterized as attacks on the weight of Johansson's testimony, which can be appropriately addressed on cross-examination. "The relevant inquiry for the Court is whether [the expert's] opinions rest on a sufficient factual basis to be considered reliable. As many courts have recognized, to meet this standard, it is not necessary to determine that the

proffered opinions are correct or that the methodology is perfect. *Florida Transportation Service, Inc. v. Miami-Dade County*, 2009 WL 10696630 *5 (S.D. Fla. December 30, 2009) (quoting *Quiet Technology DC-8, Inc.*, 326 F.3d at 1345-1346; *Cummings v. Standard Register Co.,* 265 F. 3d 56, 65 (1st Cir. 2002)("[W]hatever shortcomings existed in [the expert's] calculations went to the weight, not the admissibility, of the testimony"); *Bowers v. Northern Telecom, Inc.*, 905 F. Supp. 1004, 1007-1008 (N.D. Fla. 1995)("the court should not exclude an expert's opinion simply because a flaw exists in the expert's investigative process which leads the court to conclude the opinion is incorrect. Exclusion is justified only when the flaws are so great that the expert lacks 'good grounds' for the opinion.") (internal citations omitted)."). Because in the present action, it is evident that Johansson based her workweek opinion on her review of the evidence in this action and the performance of her calculations, the Court finds that the requisite reliability standards have been met.

Finally, the Court is satisfied that Johansson's testimony will assist the trier of fact. Gibson argues that Johansson's testimony will not be helpful because "[t]here is nothing about what the FLSA requires that would necessitate that anyone with any sort of specialized knowledge establish a workweek or decide how to count hours or calculate pay. These are purely factual events and whatever OTK actually did, it adds nothing to have Johansson testify about what OTK did (or what she supposedly thinks it did)." (Doc. 97 at 11). In response, OTK asserts "the testimony of an expert who can explain how the amounts the [sic] Mr. Gibson actually received in overtime payments were calculated based on the underlying data from the time and pay records would be useful to the trier of fact." (Doc. 105 at 19). Considering the issues with which the jury will be faced, the Court finds Johansson's testimony will assist the trier of fact, "to

understand the evidence or to determine a fact in issue." *Frazier*, 387 F.3d at 1260. Although the calculations performed by Johansson may involve basic math, her opinion that the workweek aligns with OTK's alleged workweek "as a matter of math" is likely "beyond the understanding and experience of the average citizen." *See Rouco*, 765 F.2d at 995. Accordingly, the Court agrees that Johansson's testimony will be helpful to a jury.

Finally, the Court is not compelled by Gibson's two final arguments: that Johansson's testimony is not based on personal knowledge[4] or that it is irrelevant. With respect to whether Johansson's testimony is relevant, Gibson repeats his position with respect to Johansson's lack of experience, which this Court has already found unconvincing. Gibson further argues that Johansson's "opinions about calculations boil down the [sic] to the statement that if different numbers are plugged into the calculations, the results will be different." (Doc. 97 at 13 citing Doc. 93 at 2). Finally, Gibson argues Johansson's calculations are irrelevant because they yield incorrect results or more specifically, results that are inconsistent with the FLSA's requirements. The Court does not disagree with Gibson's position that Johansson is essentially doing math. Indeed, the Court has already determined that both Johansson's and Mroz's calculations would be admissible as non-expert testimony. However, the Court is not compelled that Johannsson's calculations are irrelevant because of the results they produce. Rather, as stated herein above, the credibility and weight of Johansson's testimony can be addressed on cross examination. Similarly, the record reflects Johansson is qualified to perform the calculations she performed, able to explain those calculations and the documents and information on which they were based,

---

[4] Plaintiff's arguments are made in the alternative pursuant to under Rule 602, and as indicated hereinabove mirror the arguments made by OTK with respect to Mroz. As such, the Court's analysis with respect to Mroz would yield the same result for Johansson.

14

and her testimony will be helpful to a jury. As a result, the Court does not agree that Johansson's testimony is inadmissible because it is not based on personal knowledge or because it is irrelevant.

**CONCLUSION**

For the reasons stated above, the parties' respective motions to exclude (Docs. 95 and 97) are **DENIED**.

**DONE and ORDERED** this 17th day of May, 2023.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE